**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2002-CT-01485-SCT**

*IN THE MATTER OF THE ESTATE OF KELA
RICHARDSON, DECEASED: BERNICE
RICHARDSON, ADMINISTRATRIX OF THE
ESTATE OF KELA RICHARDSON*

*v.*

*VIRGIL CORNES, JR., INDIVIDUALLY AND AS
THE NATURAL FATHER AND DULY APPOINTED
GUARDIAN OF VIRGIL CORNES, III, A MINOR,
JEROME CORNES AND JULIAN CORNES*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 07/03/2002 |
| TRIAL JUDGE: | HON. WILLIAM G. WILLARD, JR. |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | ELLIS TURNAGE |
| | TAMEKIA ROCHELLE GOLIDAY |
| ATTORNEYS FOR APPELLEE: | WILLIAM HARVEY GRESHAM, JR. |
| | CURTIS D. BOSCHERT |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | AFFIRMED IN PART; REVERSED IN PART AND REMANDED - 02/17/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**EASLEY, JUSTICE, FOR THE COURT:**

## PROCEDURAL HISTORY

¶1.    The Estate of Kela Richardson was opened in the Second Judicial District Chancery

Court of Bolivar County, Mississippi, as a result of the January 29, 1996, wrongful death of

Kela Richardson (Kela). Kela's mother, Bernice Richardson (Richardson), was appointed administratrix of the estate and granted letters of administration. Richardson filed a petition for determination of heirs-at-law and wrongful death beneficiaries. Richardson also filed a petition for authority to settle a claim of the estate and wrongful death beneficiaries.

¶2. The trial court entered an order granting authority to settle a claim of the estate and wrongful death beneficiaries. The trial court also entered an order determining heirs-at-law and declaring wrongful death beneficiaries to be: Bernice Richardson (mother); Virgil Cornes, Jr., (Cornes), (father); Virgil Cornes, III (brother); Julian Cornes (brother); Jerome Cornes (brother); Chrysanthemum Richardson (sister); Nathan Duwell White (brother) and Kamia White (sister).

¶3. Following recovery in the wrongful death case, Richardson filed a petition for determination of heirs-at-law and wrongful death beneficiaries and to disinherit natural father, Virgil Cornes, Jr., and his kindred, namely being Kela's brothers, Virgil Cornes, III, Julian Cornes and Jerome Cornes, pursuant to Miss. Code Ann. § 91-1-15(3)(d)(I) (Rev. 2004). Richardson alleged that Cornes did not openly treat Kela as his child and did not provide any financial or emotional support to Kela. The trial court denied the petition to disinherit Cornes and Cornes' children because Richardson, as the administratrix, had previously filed sworn pleadings in which she alleged that the biological father and his children were heirs-at-law.[1]

---

[1]Richardson as the administratrix had sworn under oath in her petition for determination of heirs-at-law and wrongful death beneficiaries, filed August 11, 2000, that Kela was "survived by the following heirs at law and wrongful death beneficiary [sic], under Mississippi's Wrongful Death Act set forth in Mississippi Code Ann. Section 11-7-13 (cum. supp. 1992): Bernice Richardson, mother; Virgil Cornes, Jr., father; Chrysanthemum Richardson, sister; Nathan P. White, a minor brother; Kamie White, a minor sister; Virgil Cornes, III, minor brother; Julian Cornes, a minor brother and Jerome Cornes, a brother."

¶4.     Richardson appealed the trial court's decision.  A divided Court of Appeals reversed the trial court's decision and denied Cornes' motion for rehearing on August 3, 2004.  ***In re Estate of Richardson***, 2004 WL 1099993 (Miss. Ct. App. 2004).[2]

¶5.     Unhappy with the decision of the Court of Appeals, Cornes filed a petition to this Court for writ of certiorari.  This Court granted Cornes' writ of certiorari.

## FACTS

¶6.     Bernice Richardson and Virgil Cornes, Jr., were the natural parents of Kela Richardson.  Richardson and Cornes were never married.  Kela died intestate in January 29, 1996, at the age of twenty-two years old.  Richardson was granted letters of administration and proceeded with a wrongful death case on behalf of Kela's wrongful death beneficiaries.  That suit yielded a substantial settlement.

¶7.     Meanwhile, Richardson filed numerous sworn pleadings declaring Kela's heirs-at-law and wrongful death beneficiaries to be Richardson, her other children, Cornes, and Cornes' other children.   In his separate opinion Court of Appeals Judge Griffis noted, "[n]owhere did Richardson or [Ellis] Turnage advise the chancellor that any of the named individuals were 'potential' heirs or indicate that there was any remaining controversy on or challenge to the Cornes' right of heirship or their right to receive a portion of the wrongful death settlement proceeds." ***Estate of Richardson***, 2004 WL 1099993 at 14.

_____

(emphasis added).

[2]Judge Irving authored the majority decision for the Court of Appeals, in which Chief Judge King, and Judges Thomas, Lee and Chandler concurred.  Judge Griffis concurred in part and dissented in part, joined by Presiding Judges Bridges, and Southwick and Judge Myers.

¶8.    In both the estate action and the wrongful death action, Richardson was represented by attorney Ellis Turnage.    Turnage assisted Cornes and his children in filing their waivers of process and joinders to the petition for authority to settle a claim of the estate and wrongful death beneficiaries filed by Richardson to receive authority to settle Kela's wrongful death claim. Turnage also represented Cornes in creating a guardianship for his minor child for purposes of handling the settlement proceeds.[3]

¶9.    On November 29, 2000, the trial court entered an order that determined Kela's heirs-at-law and declared her eight wrongful death beneficiaries to be Richardson, Richardson's other children, Cornes and his children.    On November 29, 2000, the trial court also entered a separate order which granted Richardson the authority to settle the claims of the estate and the wrongful death beneficiaries.    That order directed Richardson to distribute the proceeds of the settlement equally between Richardson, her children, Cornes, and his children.    The order stated:

> That after acceptance of the settlement, Petitioner is authorized to distribute the remainder of the settlement funds equally among the wrongful death

---

[3] Judge Griffis stated:

Ellis Turnage apparently wore several hats. He represented Richardson in the administration of Kela's estate. He represented the wrongful death beneficiaries in the wrongful death action. He also represented Virgil Cornes, Jr. and Virgil Cornes, III, in establishing a guardianship for Virgil Cornes, III. According to the Corneses' brief, Turnage remains as the attorney of record for the guardianship of Virgil Cornes, III, a minor whose interest he is directly opposed in the petition to disinherit. While Turnage's apparent conflicting loyalties will be a topic for a different forum, it clearly evidences that the Corneses relied on Turnage to believe that no further proceedings were required to establish their rights as Kela's legal heirs and wrongful death beneficiaries.

*Estate of Richardson*, 2004 WL 1099993, n. 4.

beneficiaries of Kela Richardson, deceased, with a 1/8 (one-eighth) share being distributed to each of the 8 (eight) wrongful death beneficiaries.

¶10.    On January 4, 2001, the trial court entered an order granting authority to Richardson, as administratrix, to open an interest-bearing account and empowered her to deposit the $339, 077.80, in settlement proceeds into the account.

¶11.    Despite the trial court's orders, Richardson did not distribute the settlement proceeds. On June 6, 2001, Richardson filed a second petition to determine the heirs-at-law and wrongful death beneficiaries. Richardson requested that the trial court disinherit Cornes and his kindred pursuant to Miss. Code Ann. § 91-1-15(3)(d).[4]  On September 5, 2001, Cornes and Virgil Cornes, III, filed a petition to enforce the trial court's prior orders. Julian Cornes and Jerome Cornes subsequently joined into the petition to enforce the trial court's prior orders. Thereafter, the trial court conducted a hearing.

¶12.    On March 1, 2002, the trial court ruled that Richardson was prohibited, based on the clean hands doctrine and estoppel, from maintaining her petition to disinherit. The order of the trial court stated in pertinent part:

> That the Administratrix is prohibited, based on the clean hands doctrine and the doctrine of collateral estoppel, from maintaining her Petition to Disinherit because the Administratrix has made numerous sworn statements that the Cornes are heirs at law and wrongful death beneficiaries of the Decedent to this Court and the Court has found them in fact to be heirs at law and wrongful death beneficiaries of the Decedent, and the Administratrix cannot now make another

---

[4] Miss. Code Ann. § 91-1-15(3)(d)(I) states:

(d) The natural father of an illegitimate and his kindred shall not inherit:
        (I) From or through the child unless the father has openly treated the child as his, and has not refused or neglected to support the child.

sworn statement contrary to her prior sworn statements and receive a benefit to the detriment of the Cornes.[5]

¶13.    Richardson appealed, and the Court of Appeals reversed the decision of the trial court and remanded for a hearing on the merits of the petition to disinherit Cornes.[6]

## DISCUSSION

¶14.    The Court of Appeals held that Richardson's pleadings did not operate as a waiver of Cornes' obligation, under the statute governing inheritance from an illegitimate child, to prove that he acknowledged and supported Kela during her lifetime. *Estate of Richardson*, 2004 WL 1099993 at 5.    The Court of Appeals also held that Richardson was not barred under the doctrine of unclean hands from seeking to disinherit Cornes and his children. *Id.* at 7.    The Court of Appeals found that Cornes and his children did not suffer any detriment as a result of Richardson's petitioning to disinherit them, after admitting in her prior pleadings that they were heirs-at-law of Kela. *Id.* at 7-8.    The Court of Appeals also found that Richardson was not barred under the doctrine of equitable estoppel from petitioning to disinherit Cornes and his children. *Id.* at 8.

¶15.    We disagree.    The doctrine of unclean hands applies to the case at hand as determined by the trial court. The doctrine of unclean hands provides that "he who comes into equity must come with clean hands." *Thigpen v. Kennedy*, 238 So.2d 744, 746 (Miss.1970). In *O'Neill*

---

[5]The dissent correctly notes that, although the chancellor used the term "equitable estoppel" during the hearing and used "collateral estoppel" in the order, it is clear that the chancellor determined that Richardson was estopped from making contradictory statements. *Estate of Richardson*, 2004 WL 1099993 at 13.

[6]Cornes' cross-appeal regarding the award of fees to the Administratrix and to her attorney are not at issue in the appeal to this Court.

*v. O'Neill*, 551 So.2d 228, 233 (Miss. 1989), this Court further expounded upon the meaning of unclean hands, stating: "[t]he meaning of this maxim is to declare that no person as a complaining party can have the aid of a court of equity when his conduct with respect to the transaction in question has been characterized by wilful inequity...."  The Court in *Brennan v. Brennan*, 605 So.2d 749, 752 (Miss.1992), held that "[t]he maxim should be applied by the court sua sponte where it is shown to be applicable."  *See also* *Estate of Van Ryan v. McMurtray*, 505 So.2d 1015, 1019 (Miss. 1987) ("[t]his Court has held that when it is evident by the facts of the case that the unclean hands doctrine is applicable, the chancellor has a duty to apply that doctrine of its own motion.").  As stated by Court of Appeals Judge Griffis:

> Because of Richardson's and Turnage's actions and representations in obtaining the waivers and joinders, in submitting the Heirship Petition and the Settlement Petition and in obtaining the chancellor's approval of the orders determining Kela's heirs and authorizing the settlement of the wrongful death action, Richardson came before the court with unclean hands when she presented the petition to disinherit and should not be allowed to benefit from such wilful misconduct or such improper, unconscientious, or unjust conduct.

*Estate of Richardson,* 2004 WL 1099993 at 18.

¶16.    Likewise, the doctrine of equitable estoppel applies to bar Richardson from seeking to disinherit Cornes and his kindred.   "The doctrine of equitable estoppel is based upon fundamental notions of justice and fair dealing." *O'Neill,* 551 So. 2d at 232. The Court has identified two elements that must be satisfied: "(1) that he [a party] has changed his position in reliance upon the conduct of another; and (2) that he has suffered detriment caused by his change of position in reliance upon such conduct." *Id.* at 232 (citing *PMZ Oil Co. v. Lucroy,* 449 So.2d 201, 206 (Miss. 1984)).   In *PMZ Oil*, 449 So.2d at 206, this Court stated

7

"[w]henever in equity and good conscience persons ought to behave ethically toward one another the seeds for a successful employment of equitable estoppel have been sown." Judge Griffis stated:

> From the previous discussion of the facts of this case, the chancellor was within his discretion to find that the Corneses relied upon the actions and representations of Richardson and Turnage that they would be adjudicated as Kela's wrongful death beneficiaries. The Corneses relied on their representations of Richardson and Turnage in joining the Heirship Petition and Settlement Petition. They suffered detriment because of the change in position by Richardson and Turnage.

*Estate of Richardson*, 2004 WL 1099993 at 19.

¶17.    We find that the doctrine of judicial estoppel also applies. *Id.* at 16. "Judicial estoppel precludes a party from asserting a position, benefitting from that position, and then, when it becomes more convenient or profitable, retreating from that position later in the litigation." *Dockins v. Allred*, 849 So.2d 151, 155 (Miss. 2003). "Because of judicial estoppel, a party cannot assume a position at one stage of a proceeding and then take a contrary stand later in the same litigation." *Id.* As Judge Griffis clearly stated:

> Richardson and Turnage filed the pleadings that resulted in the case being decided based on the equitable doctrines of judicial estoppel, unclean hands and equitable estoppel, rather than on the statutory structure of Mississippi Code Annotated Section 91-1-15(3). Had Richardson and Turnage taken a different procedural route, i.e., shown candor and honesty with the chancellor, a different result may have been obtained. Instead, they chose not to do so.

*Estate of Richardson*, 2004 WL 1099993 at 16.

¶18.    The chancellor sits as the finder of fact, and "[t]he chancellor's findings of fact will not be disturbed unless there is manifest error." *Tice v. Shamrock GMS Corp.*, 735 So.2d 443, 444 (Miss. 1999) (citing *Murphy v. Murphy*, 631 So.2d 812, 815 (Miss. 1994); *Bell v.*

8

*Parker*, 563 So.2d 594, 596-97 (Miss. 1990)). We find that the trial court did not err by ruling that Richardson was now prohibited from pursuing her petition to disinherit Cornes and Cornes' children should be affirmed. Accordingly, we reverse Court of Appeals' judgment and affirm the judgment of the trial court to deny Richardson's petition to disinherit Cornes and Cornes's children.

**CONCLUSION**

¶19. We find that the Court of Appeals erred in reversing the judgment of the trial court as to the determination of heirs-at-law. Therefore, the judgment of the Court of Appeals is reversed in part and rendered in part as to the determination of heir-at-law as discussed in the opinion above. The judgment of the Second Judicial District Chancery Court of Bolivar County is affirmed in part as to the determination of heirs-at-law.

¶20. The issue of the administratrix's fees and attorney's fees raised in Cornes's cross-appeal at the Court of Appeals was not presented to this Court on petition for certiorari. Therefore, the judgment of the Court of Appeals is affirmed in part as to the award of administratrix's fees and attorney's fees. The judgment of the Second Judicial District Chancery Court of Bolivar County is reversed in part and remanded in part as to the issue of administratrix's fees and attorney's fees in accordance with the judgment of the Court of Appeals.

¶21. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED IN PART AND RENDERED IN PART AS TO THE DETERMINATION OF HEIRS-AT-LAW. THE JUDGMENT OF THE CHANCERY COURT OF THE SECOND JUDICIAL DISTRICT OF BOLIVAR COUNTY IS AFFIRMED IN PART AS TO THE DETERMINATION OF HEIRS-AT-LAW. THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REMANDED IN PART AS TO THE AWARD OF ADMINISTRATRIX'S FEES AND ATTORNEY'S FEES. THE JUDGMENT OF THE CHANCERY COURT OF THE**

**SECOND JUDICIAL DISTRICT OF BOLIVAR COUNTY IS REVERSED IN PART AND REMANDED IN PART AS TO THE AWARD OF ADMINISTRATRIX'S FEES AND ATTORNEY'S FEES.**

**SMITH, C.J., WALLER, P.J., CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. COBB, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, J. DIAZ, J., NOT PARTICIPATING.**

**COBB, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶22. The majority's affirmance of the trial court's decision to award wrongful death benefits to Virgil Cornes and his three sons, when the record is devoid of any evidence that the statutory requirements of Miss. Code Ann. §§ 11-7-13 & 91-1-15 (Rev. 2004) have been met, is simply incorrect. It allows an award to which they might not be entitled and deprives the other beneficiaries of an award they might receive. Therefore I must respectfully, but strongly, dissent as to the heirship issue.[7]

¶23. Section 11-7-13 states in pertinent part that:

> The provisions of this section shall apply . . . to the natural father on account of the death of the illegitimate child or children, and they shall have all the benefits, rights and remedies conferred by this section on legitimates, **if the survivor has or establishes the right to inherit from the deceased under Section 91-1-15.**

(Emphasis added).

¶24. Section 91-1-15 states in pertinent part that:

> (3) An illegitimate shall inherit from and through the illegitimate's natural father and his kindred, and the natural father of an illegitimate shall inherit from and through the illegitimate according to the statutes of descent and distribution if:

---

[7] However, the majority's decision to reverse and remand to the trial court on the issues of the administratrix fee and attorney fee is correct, and I concur on those issues.

10

(a) The natural parents participated in a marriage ceremony. . . or

(b) There has been an adjudication of paternity or legitimacy before the death of the intestate; or

c) There has been an adjudication after the death of the intestate, **based on clear and convincing evidence**, in an heirship proceeding under Sections 91-1-27 and 91-1-29. However, no such claim of inheritance shall be recognized unless the action seeking an adjudication of paternity is filed within one (1) year after the death of the intestate or within ninety (90) days after the first publication of notice to creditors to present their claims, whichever is less . . .

**(d) The natural father of an illegitimate and his kindred shall not inherit:**

**(I) From or through the child unless the father has openly treated the child as his, and has not refused or neglected to support the child...**

(Emphasis added).

¶25.    Although the administratrix stated in her petition for authority to settle claim of estate and wrongful death beneficiaries, filed on September 5, 2000, that the eight petitioners "have been declared wrongful death beneficiaries by separate order of the court," the record reveals no such order signed until November 29, 2000. And that order does not mention anything about the requirements of Section 91-1-15 having been met with regard to subsection © or (d). It contains only a summary statement that the eight (including Virgil Cornes and his three sons) are the sole and only heirs at law and wrongful death beneficiaries.

¶26.    It is undisputed that Virgil Cornes was the natural father of the deceased, Kela Richardson. However, the question as to whether he had complied with Section 91-1-15 was never raised until June 6, 2001, when the administratrix filed a "petition for determination of heirs and wrongful death beneficiaries and to disinherit the natural father and his kindred." In that petition she states numerous facts including, inter alia, that she became pregnant with Kela

by Cornes; he abandoned her and provided no financial or emotional support during the pregnancy or birth; he visited Kela only twice during her childhood (when she was 2 ½ and again when she was 4 or 5 years old); and he never financially or emotionally supported Kela. He did, however, attend her funeral and paid $300 toward her funeral. Cornes responded by filing a petition to enforce the prior orders of the court, claiming that the first order was res judicata, that he and his son should get their equal shares, and that the administratrix breached her fiduciary duty and she should be sanctioned for filing a frivolous motion to disinherit him. He did not dispute the allegations about his failure to support, etc. which are critical to the proper application of Section 91-1-15.

¶27. This Court has recently recognized the absolute necessity of meeting the requirements of Section 91-1-15 in order for a father and his kindred to claim wrongful death benefits through a deceased illegitimate child. See *Williams v. Farmer*, 876 So.2d 300 (Miss. 2004); *Estate of Patterson v. Patterson*, 798 So.2d 347 (Miss. 2001).

¶28. The record does not reveal that the chancery court ever even considered Section 91-1-15. At a hearing on February 22, 2002, the administratrix's petition to disinherit, as well as Cornes's petition to enforce the prior orders which found that he and his sons would share equally, was before the chancery court. No testimony was heard, only arguments of counsel. There was only very brief mention of Cornes's petition, and clearly no determination was made on the merits of the statutory requirements necessary to support Cornes's inheritance claim. The chancellor included many findings, but the two which are critical to the appeal before us are: that the November 29, 2000, orders were not final judgments and that the administratrix Bernice Richardson is prohibited by doctrines of clean hands and collateral estoppel from

12

maintaining her petition to disinherit. He then ratified his prior orders, and ordered Richardson to file a petition to close the estate and fully account for the funds to be distributed in 8 equal shares. Still no mention was made regarding final judgment on M.R.C.P. 54(b).

¶29. Following a telephonic hearing on June 19, 2002, the chancellor filed an order on July 3, 2002, again reaffirming and incorporating the prior orders and finding all eight to be included in the division of all funds. This order was certified final pursuant to M.R.C.P. 54(b). On July 19, 2002, Richardson timely filed a motion for rehearing and to stay enforcement of judgment pending appeal without supersedeas, in which she again pointed out that the orders and record are silent as to the merits of her petition to disinherit. The chancellor granted, in toto, the stay of enforcement pending appeal.

¶30. In my view, the fact that Bernice Richardson, in many pleadings, named all eight of the petitioners as heirs at law and wrongful death beneficiaries, does not constitute unclean hands sufficient to overcome the necessity to apply the proper statutory requirements to determining the wrongful death beneficiaries. There is absolutely nothing in the record to indicate that Bernice Richardson deliberately misrepresented or falsified who was entitled to inherit from Kela Richardson. I dare say that it is a rare administratrix, even a highly educated one, who knows the nuances and specifics of the laws of descent and distribution as applied in wrongful death cases. And my research did not reveal any cases in which we have held this or similar knowledge to be the duty of an administratrix. It was clear from the very beginning, from the names of the petitioners and the information which Bernice provided, that there were illegitimate children at issue. Even when, several years into this case, she filed the petition to

13

set aside the prior orders and to disinherit the Corneses, the document prepared for her signature still incorrectly listed all eight as heirs at law and wrongful death beneficiaries.

¶31. The Court of Appeals correctly found that an administratrix is under an affirmative duty to disclose to a court the existence of known potential heirs and claimants. Miss. Code Ann. § 91-7-293 (Rev. 2004); *Smith ex rel. Young v. Estate of King*, 501 So.2d 1120, 1123 (Miss. 1987). In fulfilling this duty, an administratrix "is the arm of the court employed under the law to collect and distribute the estate of the deceased . . . ." *Id.* at 1252 (quoting *In re Will of Hughes*, 241 Wis. 257, 5 N.W.2d 791, 794 (1942)). When Richardson listed Virgil Cornes, Jr., and his sons as heirs at law and wrongful death beneficiaries in pleadings before the chancery court, she actually was fulfilling her duty under the law to disclose their existence. Her numerous sworn statements regarding Cornes and his sons were actually to her detriment. Thus, the majority is wrong to characterize Richardson's actions in fulfilling her duties as administratrix of Kela's estate as "willful misconduct . . . improper, unconscientious . . . [and] unjust conduct." Maj. Op. ¶15 (quoting Court of Appeals' separate opinion). Accordingly, Richardson is not barred by the clean hands doctrine from maintaining her petition to disinherit the Corneses.

### Equitable Estoppel

¶32. Richardson is also not barred by the doctrine of equitable estoppel from adopting and maintaining her petition to disinherit once she learned the statutory requirements which needed to be satisfied in order to properly distribute the assets. There is no evidence that the Corneses suffered detriment because of Richardson's earlier pleadings. In fact, they benefitted from her error because they were included from the outset, instead of being excluded under

14

Section 91-1-15. Because the prior orders of the chancellor were not final, the Corneses were still able to conduct an effective defense of their interests. The chancery court denied Richardson's petition to disinherit and found in favor of the Corneses. Thus, the Corneses suffered no detriment and equitable estoppel cannot apply.

**Judicial Estoppel**

¶33. Finally, Richardson should not be barred by the doctrine of judicial estoppel from maintaining her petition to disinherit. Richardson did not benefit from her earlier pleadings listing the Corneses as potential heirs and beneficiaries. In fact, listing the Corneses was a detriment to Richardson since, but for them, she was a potential heir and beneficiary to a much larger share of Kela's estate. Acknowledging the Corneses as potential heirs and beneficiaries doubled the number of potential heirs and beneficiaries, thus lowering the resulting inheritance. When a party does not benefit from the prior assertion, the doctrine of judicial estoppel should not be applied. *Thomas v. Bailey*, 375 So.2d 1049, 1053 (Miss. 1979). Accordingly, judicial estoppel is not applicable in this case.

¶34. In my view, the Corneses are entitled to their day in court to make their arguments. In that regard, I agree with the Court of Appeals majority that the matter should be reversed and remanded for an evidentiary hearing on the heirship issue. I respectfully disagree with the majority's holding that a chancellor can ignore statutory requirements and reduce the lawful benefits due to innocent statutory beneficiaries, due to an administratrix's error, which in no way has been proved by the record to be intentional.

**GRAVES, J., JOINS THIS OPINION.**