876 So.2d 1087 (2004)
Linda Ann Bell SMITH, Appellant,
v.
Francis BELL, III, Appellee.
No. 2002-CA-02020-COA.
Court of Appeals of Mississippi.
June 29, 2004.
*1088 Linda Ann Smith, Appellant, pro se.
Jeffrey A. Levingston, attorney for appellant.
Robert G. Johnston, Cleveland, attorney for appellee.
Before KING, C.J., THOMAS and MYERS, JJ.
THOMAS, J., for the Court.
¶ 1. Francis Bell, III filed a complaint to determine heirship against Linda Ann Bell Smith and Fragapani Bell. The Boliver County Chancery Court adjudicated Francis Bell, III to be an heir at law of the deceased, Francis Bell, Jr. Aggrieved, Linda Ann Bell Smith asserts the following issues on appeal:
I. THE LOWER COURT COMMITTED MANIFEST ERROR BY RULING THAT FRANCIS BELL, III IS THE BIOLOGICAL CHILD OF FRANCIS BELL, JR.
II. THE TRIAL COURT APPLIED AN ERRONEOUS EVIDENTIARY STANDARD BY FINDING THAT FRANCIS BELL, III WAS THE CHILD OF FRANCIS BELL, JR. BY CLEAR AND CONVINCING EVIDENCE, AS OPPOSED TO DETERMINING THE CASE BY APPLYING THE STANDARD OF BEYOND A REASONABLE DOUBT.
Finding no error, we affirm.

FACTS
¶ 2. Francis Bell, III was born on February 27, 1948 to Lilly May Moore. Lilly Moore married James Ross, Sr. a few months before Francis Bell, III was born, and Francis Bell, III was named James Ross, Jr. at birth and according to Lilly Moore, the birth certificate for Francis Bell, III shows James Ross as the father. Lilly Moore had previously been the girlfriend of Francis Bell, Jr. When Francis Bell, III was approximately three years old, he was taken into the home of Francis Bell, Sr. and his wife. At the time Francis Bell, III was taken in, Francis Bell, Jr. was also living with Francis Bell, Sr.
¶ 3. Francis Bell, Jr. married Mattie May Henson Bell a few years later and moved into his own house on the family farm approximately three miles away and had two children, Linda Ann Bell Smith, born on February 25, 1951, and Fragapani Bell, born on August 26, 1958. Linda and Fragapani lived with their father and mother until Linda, the appellant, was approximately thirteen at which time her parents were divorced. She and Fragapani then moved in with their grandparents, Francis Bell, Sr. and his wife with whom Francis Bell, III also lived.
¶ 4. Francis Bell, III filed a complaint to determine heirship in the Chancery Court of Bolivar County against his alleged half-siblings, Linda and Fragapani, and against *1089 two other putative children. The other two putative children filed informal responses which were dismissed as being time barred and they did not appeal. Linda Ann Bell Smith answered. Fragapani Bell filed a pro se answer but did not appear at trial and took no part, as he was incarcerated at the time in the custody of the Mississippi Department of Corrections.
¶ 5. At trial, Francis Bell, III testified that he grew up in Mound Bayou, Mississippi, and that Francis Bell, Jr. was his father. He testified that his earliest memories were living at Francis Bell, Sr.'s home with Francis Bell, Jr. Francis Bell, III testified regarding his relationship with Linda and Fragapani, stating that they grew up together, played together, ate together, went to Wanderers' Home Baptist Church together, shared items, and that they had some fights and scuffles as siblings would. He testified that he called Francis Bell, Jr., "Daddy" and that Francis Bell, Jr. would take him riding and shopping and that he received treatment identical to that given to Linda and Fragapani. Francis Bell, III entered into evidence an assessment against him, Linda, and Fragapani with reference to repairs and expenses of the farm inherited from their grandfather, Francis Bell, Sr. Francis Bell, III also stated that he attended all but one family reunion and sat with Linda at Francis Bell, Jr.'s funeral. He testified that he was willing to submit to a DNA test but could not afford one. On cross-examination, Francis Bell, III admitted that he did not have his birth certificate but was told it did state that James Ross, Sr. was his father. He also stated that Francis Bell, Jr. came to visit him at his home in Illinois. Following cross-examination, the trial court questioned Francis Bell, III further about his relationship with Francis Bell, Jr.
¶ 6. Lilly May Moore testified that Francis Bell, III was the son of her and Francis Bell, Jr. She testified that she moved to Wisconsin and agreed that Francis Bell, Jr. could raise the child. When she returned three years later she found Francis Bell, III living with his grandparents. Lilly also testified that Francis Bell, Jr. had papers made out by a lawyer in Mound Bayou named B.A. Green, who was at least called "Judge" Green, to legally change the child's name from James Ross, Jr. to Francis Bell, III. These papers were not presented into evidence. Francis Bell, III's half brother, Lawrence Ross, also testified on Francis Bell, III's behalf, stating that he often visited Francis Bell, III at home with the Bell family and that the relationship between Francis Bell, Jr. and Francis Bell, III was a father-son relationship.
¶ 7. Linda Bell Smith testified that only she and Fragapani lived with their father, Francis Bell, Jr. She testified that Francis Bell, Jr. did not acknowledge Francis Bell, III as a son and that Francis Bell, III lived with her grandparents. She testified that her father was often mean to Francis Bell, III and that Francis Bell, Jr. did not go on family trips or vacations with her, her father, and Fragapani. She expressed animosity toward several aunts who had taken sides against her with Francis Bell, III. Smith testified in her opinion, Francis Bell, III was not related to her even though he had the name Francis Bell, III.
¶ 8. Atevia Battle, a sister of Francis Bell, Jr., testified that Francis Bell, III lived with her parents and not with Francis Bell, Jr., and that Francis Bell, Jr. often treated Francis Bell, III harshly. She testified there was no relationship between Linda and Fragapani and Francis Bell, III, and that they only lived together after Francis Bell, Jr.'s divorce, which she said was when Linda was ten or eleven *1090 years old. Battle did testify that Francis Bell, III attended Francis Bell, Sr.'s funeral and was treated like family and that Francis Bell, Sr. treated him like the rest of the family before his death.
¶ 9. Allie Bell Jacox and Bernice Walker, two other sisters of Francis Bell, Jr., testified on behalf of Francis Bell, III, stating that according to family representations, Francis Bell, Jr. was the father of Francis Bell, III. They testified that Francis Bell, Jr. had dated Lilly Moore in high school and the rumor was that she had been pregnant with Francis Bell, Jr.'s child. According to his sisters, Francis Bell, Jr. wanted to raise his child and called him "Little Jr.". Although Francis Bell, Jr. was often mean to others, he was good to Francis Bell, III. Allie Bell Jacox identified numerous family photographs which showed Francis Bell, III with other members of the family including Linda and Fragapani.
¶ 10. Francis Bell, III also entered other documentary evidence including a copy of the obituary for Francis Bell, Jr. which listed him as a survivor, as well as school records that listed his father as "Francis Bell," and military records that listed his own name as Francis Bell, III. At the conclusion of the trial, the court entered a judgment stating that he was completely satisfied, "beyond clear and convincing evidence," that the father of Francis Bell, III was Francis Bell, Jr.

ANALYSIS
I. THE LOWER COURT COMMITTED MANIFEST ERROR BY RULING THAT FRANCIS BELL, III IS THE BIOLOGICAL CHILD OF FRANCIS BELL, JR.
II. THE TRIAL COURT APPLIED AN ERRONEOUS EVIDENTIARY STANDARD BY FINDING THAT FRANCIS BELL, III WAS THE CHILD OF FRANCIS BELL, JR. BY CLEAR AND CONVINCING EVIDENCE, AS OPPOSED TO DETERMINING THE CASE BY APPLYING THE STANDARD OF BEYOND A REASONABLE DOUBT.
¶ 11. Linda Ann Smith combines both issues into one argument in her brief. We will likewise examine them together. Smith asserts that the trial court erred in ruling that Francis Bell, III is the biological child of Francis Bell, Jr, and that an erroneous evidentiary standard of clear and convincing evidence was applied rather than determining the case by applying the standard of beyond a reasonable doubt. Appellee Francis Bell, III argues that Smith failed to cite any authority in regard to her first issue arguing solely on the facts presented to the lower court. Bell also asserts that Smith did not raise the evidentiary standard issue before the lower court and it is therefore not properly before this Court.
¶ 12. "This Court will not disturb the chancellor's opinion when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." Holloman v. Holloman, 691 So.2d 897, 898 (Miss.1996). Where there is substantial evidence to support a chancellor's findings, this Court is without the authority to disturb his conclusions, although it might have found otherwise as an original matter. In re Estate of Harris, 539 So.2d 1040, 1043 (Miss.1989). Additionally, where the chancellor has made no specific findings, we will proceed on the assumption that he resolved all such fact issues in favor of the appellee. Newsom v. Newsom, 557 So.2d 511, 514 (Miss.1990). The chancellor's decision must be upheld unless it is found to be contrary to the weight of *1091 the evidence or if it is manifestly wrong. O.J. Stanton and Co. v. Mississippi State Highway Comm'n, 370 So.2d 909, 911 (Miss.1979).
¶ 13. In order for an illegitimate child to inherit from his or her natural father, there must be an adjudication of paternity after the death of the intestate based upon clear and convincing evidence. Miss Code Ann. Sect. 91-1-15(3)(c) (Rev.1994). However, there is a rebuttable presumption of the legitimacy of a child born during the course of a marriage. In Re Taylor, 609 So.2d 390, 394 (Miss.1992). "The presumption of legitimacy is one of the strongest known to our law." Karenina by Vronsky v. Presley, 526 So.2d 518, 523 (Miss.1988). Under the facts of this case, there was therefore a strong, but rebuttable, presumption that James Ross was the biological father of Francis Bell, III. A party challenging legitimacy may prevail if he proves beyond a reasonable doubt that the legal husband of the mother is not, in fact, the biological father. Baker By Williams v. Williams, 503 So.2d 249, 253 (Miss.1987); Deer v. State Department of Public Welfare, 518 So.2d 649, 652 (1988); Dixon v. Curtis, 340 So.2d 722, 727 (Miss.1977).
¶ 14. The Mississippi Supreme Court has held that an illegitimate child does not have the burden of rebutting the presumption of legitimacy before the question of whether they are the biological child of the decedent is reached. In Re Taylor, 609 So.2d at 394. Obviously, proof that Francis Bell, III was the biological son of Francis Bell, Jr. would be substantial proof that he was not the biological son of James Ross, and should be considered in deciding whether the presumption has been rebutted. Id. In Taylor, the Mississippi Supreme Court reversed the chancellor's finding that Joyce Perkins was the natural daughter of the decedent even though Perkins' mother had been married to another man at the time of her birth. Id. at 390. Even with its limited scope of review, under the totality of the circumstances the court was left with the firm and definite conviction that a mistake had been made and that the evidence showed that Joyce was the daughter of Robert Taylor and not the daughter of Ben Perkins, despite the strong presumption of legitimacy. Id.
¶ 15. The chancellor in the case at bar stated that he was completely satisfied, beyond clear and convincing evidence, that Francis Bell, III is the biological child of Francis Bell, Jr. This evidence consisted of testimony by Francis Bell, III; his mother Lilly Moore, who stated unequivocally that Francis Bell, Jr. was the father of Francis Bell, III; testimony of two sisters of Francis Bell, Jr.; and school and military records that listed Francis Bell, Jr. as his father and bore the name "Francis Bell, III." Francis Bell, Jr.'s obituary was also introduced into evidence which listed Francis Bell, III as a survivor.
¶ 16. The evidence provides a substantial basis upon which the chancellor could have based his decision. The chancellor used the correct standard of clear and convincing evidence, as stated in Mississippi Code Annotated Section 91-1-15(3)(c), to find that Francis Bell, III was the biological child of Francis Bell, Jr. The chancellor did not state clearly that he found Francis Bell, III was not the child of James Ross beyond a reasonable doubt. However, this finding is implicit in his ruling that Francis Bell, III is the child of Francis Bell, Jr. by clear and convincing evidence.
¶ 17. Linda Smith asserts that this Court should adopt case law requiring paternity testing in order to provide a means for the trial court to meet its burden. Smith cites Mississippi Code Annotated Section 93-9-21 (Supp.2003), a part of the Mississippi Uniform Law on Paternity in *1092 support of her assertion. Although it is true that testing would have provided substantial evidence to the chancellor, this Court has previously stated:
Section 93-9-21(1) is part of the uniform law on paternity, which sets forth the obligations placed upon the father of a child born out of wedlock. The case at bar deals with the rights of illegitimate children under Section 91-1-15(3)(c). The Appellants are unable to cite, and we are unable to find, any case in which Section 93-9-21(1) has been applied to a case of descent and distribution. There is no applicable statutory provision or judicial decision mandating or even suggesting the necessity of blood testing or DNA evidence in cases of descent among illegitimates. Furthermore, whether it is within the authority of a chancellor conducting an heirship proceeding under Section 91-1-15(3)(c) to order genetic testing under some authority other than Section 93-9-21 upon the request of any party to the proceeding is a question that we need not answer at this time since no such request was made at the trial level.
Jordan v. Baggett, 791 So.2d 308, 311(¶ 15) (Miss.Ct.App.2001). Lacking any such request at the trial level in the case at bar, we see no reason to alter our position. This issue is without merit.
¶ 18. THE JUDGMENT OF THE CHANCERY COURT OF BOLIVAR COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND SOUTHWICK, P.JJ., IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. LEE, J., CONCURS IN RESULT ONLY.